**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
rclarkson@clarksonlawfirm.com
Katherine A. Bruce (SBN 288694)
kbruce@clarksonlawfirm.com
Kelsey J. Elling (SBN 337915)
kelling@clarksonlawfirm.com
Olivia Treister (SBN 341191)
otreister@clarksonlawfirm.com
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MADELINE PANTONI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SPINDRIFT BEVERAGE COMPANY, INC.<br><br>Defendant. | Case No.:<br>Case Filed: January 3, 2023<br><br>**CLASS ACTION COMPLAINT**<br><br>1. Violation of Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)<br>2. Violation of False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)<br>3. Violation of Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*)<br>4. Breach of Warranty<br>5. Unjust Enrichment<br><br>**JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

Page No.

COMPLAINT ......................................................................................................... 1

I.    INTRODUCTION .......................................................................................... 1

II.   JURISDICTION .............................................................................................. 6

III.  VENUE ............................................................................................................ 6

IV.   PARTIES ......................................................................................................... 6

      A.    Plaintiff ............................................................................................... 6

      B.    Defendant ............................................................................................ 8

V.    FACTUAL ALLEGATIONS .......................................................................... 9

      A.    Market Background/Consumer Trends ................................................ 9

      B.    Manufactured Citric Acid Is an Undesirable and Potentially Hazardous
            Synthetic/Artificial Flavoring Agent and Preservative in Food and Beverages ......... 10

      C.    Defendant's Brand Strategy and Marketing Campaign ................................ 12

      D.    Plaintiff and Reasonable Consumers Were Misled by the Challenged
            Representations into Buying the Products, to Their Detriment, Consistent with
            Defendant's Deliberate Marketing Scheme to Exact a Premium for the Falsely
            Advertised Products ...................................................................................... 33

      E.    The Products are Substantially Similar ...................................................... 39

      F.    No Adequate Remedy at Law .................................................................... 40

VI.   CLASS ACTION ALLEGATIONS ............................................................. 42

VII.  CAUSES OF ACTION ................................................................................. 45

      COUNT ONE ................................................................................................. 45

            "Unfair" Prong ..................................................................................... 48

            "Fraudulent" Prong .............................................................................. 50

            "Unlawful" Prong ................................................................................ 51

      COUNT TWO ................................................................................................ 52

      COUNT THREE ............................................................................................ 54

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1

COUNT FOUR ................................................................................................. 57

2

COUNT FIVE .................................................................................................. 59

3

VIII.  PRAYER FOR RELIEF ................................................................................... 60

4

DEMAND FOR JURY TRIAL.................................................................................... 62

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

**COMPLAINT**

1. Plaintiff Madeline Pantoni ("**Plaintiff**"), individually and on behalf of all others similarly situated, as more fully described herein (the "**Class**" and/or "**Class Members**"), brings this class action complaint against Defendant Spindrift Beverage Co., Inc. ("**Defendant**" and/or "**SBCI**"), and alleges the following upon information and belief, unless otherwise expressly stated as based upon personal knowledge.

## I.   INTRODUCTION

2. **Challenged Representations.** In an effort to increase profits and to obtain an unfair advantage over its lawfully acting competitors, Defendant falsely and misleadingly labels certain of its Spindrift® brand sparkling water ("**Sparkling Water Products**") and spiked sparkling water ("**Spiked Products**") with prominently displayed and repeated statements that the Products only contain two ingredients: sparkling water and real fruit or spiked sparkling water and real fruit. *See*, *infra*, ¶ 4 (identifying each Sparkling Water Product and Spiked Product, which collectively are referred to herein as the "**Products**"). Specifically, on each of the Sparkling Water Products, it states on the Products' front-facing labels and packaging: "**SPARKLING WATER & REAL SQUEEZED FRUIT *yup, that's it.***" (hereinafter the "**Sparkling Representation**"). *See also* **Exhibit 1-1 to 1-4** [Sparkling Water Product Images]. Similarly, on each of the Spiked Water Products, it states on the Products' front-facing labels and packaging: "**spiked sparkling water. real squeezed [fruit]. YUP THAT'S IT.**" (hereinafter the "**Spiked Representation**"). *See also* **Exhibit 1-5 to 1-12** [Sparkling Water Product Images]. The Sparkling Representation and Spiked Representation are also hereinafter referred to as the "**Challenged Representation(s).**" The Products' labels and packaging contain a plethora of reinforcing statements and/or images on all sides of the Products' labels and packaging. *See*, *infra*, ¶ 17 (describing the Products' labels and packaging); *see also* **Exhibit 1** [Product Images]. The Challenged Representations, viewed in context, lead reasonable consumers, like Plaintiff, to incorrectly believe that the products contain only two types of ingredients: sparkling (or carbonated) water and "real" fruit, or spiked sparkling water (alcoholic carbonated water) and "real" fruit. In reality, each Product contains "citric acid" (or more accurately, manufactured citric acid (also referred to as "**MCA**")), which is a synthetic or

artificial flavoring agent and preservative that is not "squeezed from real fruit," let alone alcohol or carbonated water. An exemplar of the Spindrift® brand Sparkling Water Products and Spiked Products' labels and packaging are depicted immediately below.

 

*See also* Spindrift® *Sparkling Water*, **Exhibit 1-1 to 1-4.**

  

*See also* Spindrift® *Spiked Sparkling Water* **Exhibit 1-5 to 1-12.**

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

3. **The Deception of the Challenged Representations.** The Challenged Representations mislead reasonable consumers into believing that the Products are only composed of 2-3 types of ingredients: (1) "sparkling water" or "spiked sparkling water," and (2) "real squeezed fruit" or "real fruit." However, contrary to these representations, the products contain manufactured citric acid, which is neither carbonated water, alcohol, nor fruit—real or synthetic. Rather, it is a synthetic or artificial preservative and flavoring agent that it is not squeezed or derived from fruits, let alone carbonated water or alcohol. Instead, MCA is synthesized or derived from black mold (Aspergillus Niger) that is cultivated from corn syrup or root-vegetables. Defendant's inclusion of citric acid in the Products contradicts the Challenged Representations, which explicitly informs consumers that the products only contain sparkling water or spiked sparkling water and "real" fruit"—nothing more and certainly not artificial or synthetic flavoring agents and preservatives derived from mold. Through falsely, misleadingly, and deceptively labeling and advertising the Products, Defendant sought to take advantage of consumers' desire, perceived value, and willingness to pay more for natural, healthy, and "clean" products that only contain whole-food ingredients (such as real fruit), without the addition of synthetic or artificial flavoring additives and preservatives (such as citric acid). In this way, Defendant has charged consumers a premium for Products falsely advertised and warranted as containing only "sparkling water" or "spiked sparkling water" and "real squeezed fruit" (promising "YUP, THAT'S IT"), while cutting costs and reaping the financial benefits of utilizing cheaper and easier-to-produce ingredients, like MCA, that is not squeezed from real fruit, let alone carbonated water or alcohol, and instead is a synthetic or artificial preservative and flavoring agent. Defendant has done so at the expense of unwitting consumers, as well as Defendant's lawfully acting competitors, over whom Defendant maintains an unfair competitive advantage. Accordingly, Defendant's Challenged Representations are misleading and deceptive, and therefore unlawful.

4. **Products.** The Products at issue are Spindrift® brand sparkling water and spiked sparkling water beverages, sold to consumers in the United States during the Class Period, that display one or more of the Challenged Representations on the Products' labels and/or packaging, but also contain MCA as an ingredient, regardless of the Product's size (including each can's

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

volume, or the number of cans per pack), and regardless of whether the Product comes in a multi-pack that includes a variety of flavors (collectively referred to herein and throughout this complaint as the "**Products**"). Accordingly, the Products include, but are not limited to, the following:

a.  (1) Spindrift® *Sparkling Water* beverages (in all sizes and including any multi-packs containing a variety of flavors) that have one or more Challenged Representations on the Products' labels or packaging and contain MCA (collectively, "**Sparkling Water Products**"), including, but not limited to:

1.  Blood Orange Tangerine, in all sizes, including, but not limited to: (a) 1 count (single can), (b) 4 count packs, and (c) 8 count packs (*see* **Exhibit 1-1A to Exhibit 1-1C**);

2.  Cucumber, in all sizes, including, but not limited to: (a) 1 count (single can), (b) 4 count packs, and (c) 8 count packs (*see* **Exhibit 1-2A to Exhibit 1-2C**);

3.  Orange Mango, in all sizes, including, but not limited to: (a) 1 count (single can), (b) 4 count packs, and (c) 8 count packs (*see* **Exhibit 1-3A to Exhibit 1-3C**); and

4.  Pineapple, in all sizes, including, but not limited to: (a) 1 count (single can), (b) 4 count packs, and (c) 8 count packs (*see* **Exhibit 1-4A to Exhibit 1-4C**).

(*see* **Exhibit 1-1 to 1-4** [Product Images for Spindrift® *Sparkling Water*]);

b.  (2) Spindrift® *Spiked Sparkling Water* beverages (in all sizes and including any multi-packs containing a variety of flavors) that have one or more Challenged Representations on the Products' labels or packaging and contain MCA (collectively, "**Spiked Products**"), including, but not limited to:

5.  Blood Orange Tangerine, in all sizes, including, but not limited to: (a) 1 count (single can), (b) 8 count packs, and (c) 12 count packs, and (d) multi-packs containing a variety of flavors (e.g., Paradise Variety Pack), (*see* **Exhibit 1-5A to 1-5B, 1-11A**);

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

6.    Grapefruit, in all sizes, including, but not limited to: (a) 1 count (single can), (b) 8 count packs, and (c) 12 count packs, and (d) multi-packs containing a variety of flavors (e.g., Paradise Variety Pack) (*see* **Exhibit 1-6A to 1-6B, 1-11A**);

7.    Lemon, in all sizes, including, but not limited to: (a) 1 count (single can), (b) 8 count packs, and (c) 12 count packs, and (d) multi-packs containing a variety of flavors (e.g., Paradise Variety Pack) (*see* **Exhibit 1-7A to 1-7B, 1-11A**);

8.    Mango, in all sizes, including, but not limited to: (a) 1 count (single can), (b) 8 count packs, and (c) 12 count packs, and (d) multi-packs containing a variety of flavors (e.g., Stacation Variety Pack) (*see* **Exhibit 1-8A to 1-8B, 1-12A**);

9.    Passion Orange Guava, in all sizes, including, but not limited to: (a) 1 count (single can), (b) 8 count packs, and (c) 12 count packs, and (d) multi-packs containing a variety of flavors (e.g., Paradise Variety Pack) (*see* **Exhibit 1-9A to 1-9B, 1-11A**); and

10.    Pineapple, in all sizes, including, but not limited to: (a) 1 count (single can), (b) 8 count packs, and (c) 12 count packs, and (d) multi-packs containing a variety of flavors (e.g., Stacation Variety Pack) (*see* **Exhibit 1-10A to 1-10B, 1-12A**).

(*see* **Exhibit 1-5 to 1-12** [Product Images for Spindrift® *Spiked Sparkling Water*]).

5.    **Primary Dual Objectives.** Plaintiff brings this action individually and in a representative capacity on behalf of similarly situated consumers who purchased the Products during the relevant Class Period (Class and/or Subclass defined *infra*), for dual primary objectives: ***One***, Plaintiff seeks, on Plaintiff's individual behalf and on behalf of the Class/Subclass, a monetary recovery of the price premium Plaintiff and consumers overpaid for Products that should, but fail to, comport with the Challenged Representations (which may include, for example, damages, restitution, disgorgement, and/or any applicable penalties, fines, or punitive/exemplary damages)

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

solely to the extent that the causes of action pled herein permit such recovery. ***Two***, Plaintiff seeks, on their individual behalf and on behalf of the Class/Subclass, injunctive relief to stop Defendant's unlawful manufacture, marketing, and sale of the Products with the Challenged Representations to avoid or mitigate the risk of deceiving the public into believing that the Products conform to the Challenged Representations, by requiring Defendant to change its business practices, which may include one or more of the following: removal or modification of the Challenged Representations from the Products' labels and/or packaging, removal or modification of the Challenged Representations from the Products' advertising, modification of the Product's formulation be it a change in ingredients or their sourcing and manufacturing processes, and/or discontinuance of the Product's manufacture, marketing, and/or sale.

## II.   JURISDICTION

6.      This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## III.   VENUE

7.      Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District. Specifically, Plaintiff purchased the Products in this District, and Defendant has deliberately marketed, advertised, and sold the Products within this District using the Challenged Representations.

## IV.   PARTIES

### A.   Plaintiff

8.      **Plaintiff Madeline Pantoni.** The following is alleged based upon Plaintiff's personal knowledge:

   a.   **Residence.** Plaintiff Pantoni was previously a resident of San Francisco, California and is currently a resident of Alameda, California.

   b.   **Purchase Details.** Plaintiff purchased the Spindrift® Sparkling Water – Orange Mango (12 count) (the "**Purchased Product**") for approximately $7.00 at a

-6-

grocery store in San Francisco, California, in or around the fall of 2022 (*see generally* **Exhibit 1-3** [Product Images]).

c. **Reliance on Challenged Representations.** In making the purchase, Plaintiff read the Challenged Representations on the Product's label or packaging, leading Plaintiff to believe that the Product's ingredients solely consisted of sparkling water and real squeezed fruit—i.e., that the Product did not contain artificial or synthetic preservatives or flavoring agents that were not derived from carbonated water or real fruit.

d. **No Actual Knowledge of Falsity.** At the time of purchase, Plaintiff did not know that the Challenged Representations were false in that Plaintiff did not know that the Products contain ingredients that are neither sparkling water nor real fruit, and instead also included a synthetic or artificial preservative or flavoring agent.

e. **No Notice of Contradictions.** Plaintiff did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's labels or packaging that contradicted the prominent Challenged Representations or otherwise suggested that the Products were not, in fact, solely comprised of sparkling water and real squeezed fruit, and instead contained additional artificial or synthetic preservatives or flavoring agents.

f. **Causation/Damages.** Plaintiff would not have purchased the Product or would not have paid as much for the Product, had Plaintiff known that it was not solely comprised of sparkling water and real squeezed fruit, but instead contained additional artificial or synthetic preservatives or flavoring agents.

g. **Desire to Repurchase**. Plaintiff continues to see the Products available for purchase and desires to purchase them again if the Challenged Representations were in fact true.

h. **Lack of Personal Knowledge/Expertise to Determine Tru**th.  Plaintiff does not personally know what ingredients are actually contained in the Products or the methods used to make the Products (including sourcing and manufacturing processes), and Plaintiff does not possess any specialized knowledge or general familiarity with the Products' ingredients or the methods typically used to obtain or make the Products' ingredients (including sourcing and manufacturing processes), such that Plaintiff does not personally know and cannot determine whether the Products' ingredients—contrary to the Challenged Representations— are not derived from carbonated water, alcohol, or real fruit. Thus, Plaintiff has no way of determining whether the Challenged Representations on the Products are true.

i. **Inability to Rely**. Plaintiff is, and continues to be, unable to rely on the truth of the Products' Challenged Representations on their packaging and labels.

9. **Plaintiff's Future Harm.** Defendant continues to market and sell the Products with the Challenged Representations. Plaintiff would like to continue purchase the Products in the future if they lived up to and conformed with the Challenged Representations. However, Plaintiff is an average consumer who is not sophisticated in the chemistry, manufacturing, and formulation that goes into creating beverages for consumption, such as the Products.  Indeed, Plaintiff does not have

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

any personal knowledge regarding the ingredients or the methods Defendant used to make them (e.g., if "citric acid" is "squeezed" from a "real fruit" or if it is artificial and synthesized from black mold cultivated from corn syrup or root vegetables). Thus, Plaintiff cannot accurately differentiate between ingredients that are carbonated water, alcohol, or squeezed from real fruit, as opposed to ingredients that are neither carbonated water, alcohol, nor real fruit and instead are artificially/synthetically derived from some other type of raw ingredient (like black mold cultivated from corn syrup or root vegetables). Since Plaintiff wants to purchase the Products again to obtain the benefits of the Challenged Representations—despite the fact that the Products were once marred by false advertising or warranties—Plaintiff would likely and reasonably, but incorrectly, assume the Products are true to and conform with the Challenged Representations on their labels, packaging, and Defendant's advertisements, including Defendant's website and social media platforms. Accordingly, Plaintiff is at risk of reasonably, but incorrectly, assuming that Defendant has fixed the Products such that Plaintiff may buy them again, believing they are no longer falsely advertised and warranted. In this regard, Plaintiff is currently and in the future deprived of the ability to rely on the Challenged Representations to purchase the Products.

**B.** **Defendant**

10.     **Defendant Spindrift Beverage Co., Inc. ("Defendant" or "SBCI")** is a corporation headquartered and/or maintaining a principal place of business in the Commonwealth of Massachusetts. Defendant was doing business in the State of California at all relevant times. *See*, *e.g.*, **Exhibit 2-m** [Spindrift Spiked. Finally Webpage] (Defendant explaining that it has launched the sale of the Spiked Products specifically in Southern California and New England). Directly and through its agents, Defendant has substantial contacts with and receives substantial benefits and income from and through the State of California. Defendant is one of the owners, manufacturers, marketers, and/or distributors of the Products, and is one of the companies that created, authorized, and controlled the use of the Challenged Representations to market the Products. Defendant and its agents promoted, marketed, and sold the Products at issue throughout the United States and, in particular, within this judicial district. The unfair, unlawful, deceptive, and misleading Challenged Representations on the Products were prepared, authorized, ratified, and/or approved by Defendant

-8-

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

1    and its agents, and were disseminated throughout California and the nation by Defendant and its

2    agents to deceive and mislead consumers in the State of California and the United States into

3    purchasing the Products and/or paying a premium for them.

4    **V.    FACTUAL ALLEGATIONS**

5        **A.    Market Background/Consumer Trends**

6        11.    **Background – Clean Label and Short Ingredient Lists.** "Clean" labels in the food

7    and beverage industry are product labels, typically on the front packaging, that advertise ingredients

8    that consumers instantly recognize and understand. Such ingredients are typically whole-foods that

9    consumers are familiar with and instantly understand the health benefits of—such as fruits,

10   vegetables, or nuts. Indeed, the majority of consumers value a short and simple ingredient list and

11   seek fresh, natural, and minimally processed products.[1] According to a study conducted by the

12   Archer-Daniels-Midland Company (ADM), 60 percent of consumers are influenced to purchase

13   products with recognizable ingredients and 66 percent of consumers value labels that advertise the

14   "shortest ingredients lists possible."[2] Consumers are willing to pay a price premium for products

15   that boast short, recognizable ingredient lists,[3] like the Products at issue, which advertise that they

16   only contain two or three simple, recognizable ingredients—water (sparkling or spiked) and real

17   squeezed fruit. Companies that meet consumer demand for clean labels with short ingredient lists

18   have experienced financial success as evidenced by the 2021 Global Clean Label Manufacturer

19   Study, which found that products with clean labels experienced an increase of 15 percent in

20   revenue.[4]

21

---

22   [1] Daniel Haley, *Uncovering the Clean Label Connection to Business Growth*, INGREDION (May 16, 2022), available at https://www.ingredion.com/na/en-us/be-whats-next/growth-with-clean-
23   label.html (accessed 12/22/2022) (citing results from Ingredion proprietary research); NIELSEN CORP., *Global Health and Wellness Report* (2015), pg. 2-3, available at
24   https://www.yumpu.com/en/document/read/37177990/nielsen-global-health-and-wellness-report-january-2015 (accessed 1/3/2023).
     [2] Melissa Kvidahl Reilly, *The Whole Truth: Formulators Finding Success with Clean Label
25   Instructions*, FOOD & BEVERAGE INSIDER (Mar. 2, 2020) available at
26   https://www.foodbeverageinsider.com/ingredients/whole-truth-formulators-finding-success-clean-label-inclusions (accessed 12/22/2022).
27   [3] Judie Bizzozero, *75% of Consumers Will Pay Extra for Clean Label Ingredients*, FOOD & BEVERAGE INSIDER (Mar. 15, 2017), available at https://www.foodbeverageinsider.com/market-
28   trends-analysis/75-consumers-will-pay-extra-clean-label-ingredients (accessed 12/22/2022).
     [4] Haley, *supra* note 1.

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

12. **Background – Real Food Inclusions.** Consumers value food and beverage products that contain whole-foods—such as fruits and vegetables—over products that contain synthetic, artificial ingredients, such as MCA. According to the FDA's 2019 Food Safety and Nutrition Survey, 89 percent of consumers are concerned about artificial ingredients in food with 22 percent being "Extremely concerned."[5] According to Nielsen's 2015 Global Health & Wellness Survey, consumers prefer products that are flavored from fruits and vegetables and avoid artificial flavors and are willing to pay a price premium for those products.[6] Consumers also place value in products that contain "real" ingredients. According to Technomic's Healthy Eating report, 57 percent of consumers report that they perceive food and drinks labeled "real" to be healthier.[7] Products containing limited and real ingredients are generally perceived as "clean," and Technomic's Healthy Eating report found that 40 percent of consumers are more likely to purchase "clean" products and are willing to pay more for such products, like the Products at issue.

**B.**   **Manufactured Citric Acid Is an Undesirable and Potentially Hazardous Synthetic/Artificial Flavoring Agent and Preservative in Food and Beverages**

13. **Citric Acid is a Synthetically Produced Artificial Flavoring Agent and Preservative.** The overwhelming majority of citric acid is manufactured citric acid, which is a synthetically created artificial flavoring agent chemically manufactured and often used as a flavoring agent or preservative in beverage and food products. Manufactured citric acid is not "squeezed from real fruit"—as an ordinary consumer might assume based on its name alone. Although citric acid can be produced naturally by extracting it from citrus fruits, commercial production of citric acid for food and beverage products is not created by this natural process.[8]

---

[5] U.S. FOOD & DRUG ADMIN., *FDA's Food Safety and Nutrition Survey: 2019 Survey* (Mar. 2021), available at https://www.fda.gov/media/146532/download (accessed 12/22/2022).

[6] NIELSEN CORP., *Global Health and Wellness Report* (2015), pg. 2-5, available at https://www.yumpu.com/en/document/read/37177990/nielsen-global-health-and-wellness-report-january-2015 (accessed 12/22/2022).

[7] RESTAURANT BUS., *Consumers' Rising Demand for Real Ingredients* (Oct. 12, 2018), available at https://www.restaurantbusinessonline.com/food/consumers-rising-demand-real-ingredients (accessed 12/22/2022).

[8] Abd El-Latif Hesham, Yasser S. Mostafa, & Laila Essa Omar AlSharqi, *Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates*, 48 MYCOBIOLOGY 122, 123 (2020), available at https://www.tandfonline.com/doi/epub/10.1080/12298093.2020.1726854?needAccess=true (accessed 12/22/2022).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Rather, more than 90 percent of commercially produced citric acid is produced through a processed derivative of black mold, *Aspergillus niger*, which can cause allergic reactions and diseases in humans.[9] Negative side effects of consuming manufactured citric acid include: swelling and stiffness resulting in joint pain; muscle pain; stomach pain; and shortness of breath.[10] These symptoms were not experienced by people who consumed the natural form of citric acid, which is derived from real fruits.[11]

14. **Citric Acid is a Preservative.** The FDA classifies and identifies citric acid as a preservative in its Overview of Food Ingredients, Additives, and Colors, on the FDA's website and provides examples of uses of preservatives like citric acid, including, in beverages.[12] Citric acid acts as a preservative in the Product regardless of the subjective purpose or intent for why Defendant added citric acid to the Product, including, as a flavoring agent. Citric acid in beverages functions as a preservative by serving as an acidulant and as an indirect antioxidant, by infiltrating and then weakening or killing microorganisms through direct antimicrobial effect lowering their pH-level and thereby combatting microorganisms, and through sequestration.[13] Citric acid serves these functions regardless of whether it is also being used as an artificial flavor.[14]

15. **Citric Acid in Sparkling Water is Corrosive to Teeth.** Citric acid in beverages, specifically in seltzers and sparkling waters, has a corrosive impact on consumers' teeth and the health of their enamels. One study by the University of Birmingham School of Dentistry concluded

---

[9] *Id.*; Iliana E. Sweis & Bryan C. Cressey, *Potential Role of The Common Food Additive Manufactured Citric Acid in Eliciting Significant Inflammatory Reactions Contributing to Serious Disease States: A Series of Four Case Reports*, 5 TOXICOLOGY REPORTS 808, 809–811 (2018), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/ (accessed 12/22/2022) (further noting that 99% of manufactured citric acid or MCA is derived from Aspergillus niger); Rosaria Ciriminna, Francesco Meneguzzo, Riccardo Delisi, & Mario Pagliaro, *Citric Acid: Emerging Applications of Key Biotechnology Industrial Product*, 11 CHEMISTRY CENT. J. 22 (2017), available at https://doi.org/10.1186/s13065-017-0251-y (accessed 12/22/2022); K. Kirimura, Y. Honda, & T. Hattori, *Citric Acid*, 3 COMPREHENSIVE BIOTECHNOLOGY 135 (2011), available at https://www.sciencedirect.com/science/article/pii/B9780080885049001690 (accessed 12/22/2022).
[10] Gavin Van De Walle, *What is Citric Acid, and Is It Bad for You?*, HEALTHLINE (Sept. 30, 2021), https://www.healthline.com/nutrition/citric-acid#safety (accessed 12/22/2022).
[11] *Id.*
[12] *See Overview of Food Ingredients, Additives & Colors,* FDA, available at https://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-colors (accessed 1/3/2023).
[13] John M. deMan, *Acids as food additives serve a dual purpose, as acidulants and as preservatives*, PRINCIPLES OF FOOD CHEMISTRY (AVI Publishing Co., Inc., 1999), at p. 438.
[14] *Id.*

that "[c]itric acid has a particularly high erosive potential as a result of both its acidic nature and its chelating (calcium binding) properties . . . in composition alone, these flavoured water drinks should be considered as acidic as fruit drinks rather than water with flavouring."[15]

### C.   Defendant's Brand Strategy and Marketing Campaign

16.   **Brand Strategy/Marketing Campaign.** Defendant deliberately designed and executed a marketing campaign to distinguish the Spindrift® brand from their competitors, as a brand and company that manufactures clean, simple, well-designed sparkling water and spiked sparkling water beverages made with real squeezed fruit, and nothing more (yup, that's it). Previously, Defendant sold the similar sparkling water products that contained unspecified "natural flavors" that were sweetened with added sugar. *See* **Exhibit 2-l** [We're Doubling Down on Real Fruit]. Approximately five years ago, Defendant discontinued the sugar-sweetened, naturally flavored line of products and "decided to double down on [its] commitment to taste, transparency, and real, simple ingredients by removing all natural flavors (or essences) from [its] unsweetened sparkling waters. Now, each and every can of Spindrift is made of only sparkling water and real fruit. That's it." *Id.* Defendant purposefully made this change to appeal to consumers' desire for clean products containing whole-food ingredients and to gain a competitive advantage over other beverage and sparkling water or hard seltzer companies. Defendant signified its shift in product formulation by launching an extensive advertising campaign to make the brand synonymous with two ingredients—"sparkling water and real squeezed fruit" or "spiked sparkling water and real squeezed fruit," emphasizing "Yup, that's it." Defendant also created a spin-off of its Sparkling Water Products, when it created its Spiked Products. *See* **Exhibit 4-c** [Spindrift Spiked - The Story] ("Think of Spiked as the sequel to the Spindrift Story….a spiked version of our product"). In furtherance of Defendant's marketed identity and mission, Defendant repeatedly characterizes the Products as containing only two ingredients, sparkling water or spiked sparkling water and real fruit, repeatedly emphasizing the Challenged Representations. Not only does Defendant label and package the Products with the Challenged Representations, but Defendant's advertising campaign

---

[15] Catriona J. Brown, et al., *The Erosive Potential of Flavoured Sparkling Water Drinks*, 17 Int'l J. Paediatric Dentistry 86, 90 (2007).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

and brand strategy focus on the Products containing only **real** fruit. As described below, Defendant maintains a Spindrift® website for its non-alcoholic drinks (Sparkling Water Products), a separate Spiked Spindrift® website for its alcoholic drinks (Spiked Products), and several Spindrift® social media accounts—all designed to promote the brand and the company's identity and goals, as well as market the Product, in line with its brand strategy, as Products that are only made of sparkling water or spiked sparkling water and real fruit, to the exclusion of any other ingredients, such as artificial or synthetic preservatives and flavoring agents.

17.    **Challenged Representations on the Products' Labels.** Defendant falsely and misleadingly labels and packages the Products, as depicted below, with the Challenged Representations: "SPARKLING WATER & REAL SQUEEZED FRUIT yup, that's it," or "spiked sparkling water. real squeezed [fruit]. YUP THAT'S IT." Exemplars follow immediately below:

*Front & Back Panels of Packaging (Sparkling Water Product)*



*Top Panel of Packaging (Sparkling Water Product)*



1

**Bottom Panel of Packaging (Sparkling Water Product)**



**Sides Panels of Packaging (Sparkling Water Product)**



*See*, *e.g.*, **Ex. 1-1** [Blood Orange Tangerine 8-Pack].

/ / /

/ / /

/ / /

/ / /

/ / /

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

1

*Front Panel of Packaging (Spiked Product)*



*Back Panel of Packaging (Spiked Product)*



*Top Panel of Packaging (Spiked Product)*




real squeezed fruit.
**undeniably delicious.**

   

| PINEAPPLE | MANGO | LIME | HALF & HALF |
|---|---|---|---|
| 2 slices of pineapple | 2 slices of mango & 1 piece of orange | 1½ limes | ⅝ of a lemon & brewed black tea |

*Bottom Panel of Packaging (Spiked Product)*



*Side Panels of Packaging (Spiked Product)*










*See*, *e.g.*, **Ex 1-12** [Stacation Variety 12-Pack]; *see also* https://www.food4less.com/p/spindrift-spiked-sparkling-water/0085002545705?fulfillment=IN_STORE (accessed 12/22/2022). The Challenged Representations on the Products' labels and packaging are conspicuous and designed to grab the consumer's attention. For example:

    a. **Placement.** On the front-facing labels of each Product's can, the Challenged Representations are prominently placed in the center, covering more than 50% of each label's front panel. Images of the can, with the Challenged Representations, also appear on the front panel of the Products' packaging, as well as the back and one or more side panels. *See* **Exhibit 1** [Product Images].

    b. **Repetition.** The Challenged Representations are repeatedly used on the Products' cans and several panels of the Product's packaging, including the front, back, bottom, and/or one or more side panels. Indeed, some version, a portion of the Challenged Representations, or reinforcing statements and imagery appear on all sides of the Product's can and packaging.

      (1) For example, on the Sparkling Water Products:

        (a) The front packaging states "SPARKLING WATER & REAL SQUEEZED FRUIT," identifies the fruit (e.g., "blood orange tangerine," and displays an image of the can, which has an image of a fruit on it, identifies the fruit, and states "SPARKLING WATER & REAL SEQUEEZED FRUIT yup, that's it."

        (b) On the top panel of the packaging, it displays images of fruits and states "We squeezed [fruits] into this 8-pack of sparkling water."

        (c) On the bottom panel, it discusses the fruits that flavor the beverage and states "Just sparkling water & real squeezed fruit yup, that's it."

        (d) On one side panel, it lists the same two ingredients, carbonated water and fruit (e.g., "Ingredients: Carbonated water, Blood Orange Juice, Tangerine Juice, Citric Acid), and concludes "yup, that's it."

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

(e) On the other side panel, it includes an image of the can, which displays an image of a fruit and states "SPARKLING WATER & REAL SQUEEZED FRUIT yup, that's it.

*See*, *supra*; *see also* **Exhibit 1-1 to 1-4** [Sparkling Water Product Images].

(2) Similarly, on the Spiked Water Products:

(a) The front packaging states "spiked sparkling water," identifies the fruit flavors (e.g., "PINEAPPLE MANGO LIME HALF & HALF"), and displays an image of the can, which identifies the fruit (e.g., "PINEAPPLE") and states "spiked sparkling water. real squeezed [fruit]. YUP, THAT'S IT."

(b) On the top panel of the packaging, it states "spiked . . . real squeezed fruit," identifies the fruit flavors (e.g., "PINEAPPLE MANGO LIME HALF & HALF"), and notes the quantity of fruit in each can (e.g., "2 slices of pineapple," "2 slices of mango & 1 piece of orange," "1 1/3 limes," and "2/3 of a lemon . . ."

(c) On the back panel, it states "the cleaner twist on hard seltzer" and displays an image of each can, identifying each fruit and repeatedly stating "spiked sparkling water. real squeezed [fruit]. YUP, THAT'S IT."

(d) On the bottom panel, it reiterates each fruit flavor (e.g., "PINEAPPLE," "MANGO," "LIME," and "HALF & HALF"), repeatedly identifies the product as alcoholic ("4% ALC BY VOL," "these have alcohol"), and lists the three same ingredients, carbonated water, alcohol, and fruit (e.g., "INGREDIENTS: CARBONATED WATER, ALCOHOL FROM FERMENTEDCANE JUICE, PINEAPPLE JUICE, CITRIC ACID").

(e) On each side panel, it displays an image of the can that repeats "spiked sparkling water. real squeezed [fruit]. YUP, THAT'S IT."

(f) At times, on one side panel, it also states "SPIKED," "REAL SQUEEZED FRUIT," "NOTHING ARTIFICIAL," "ALCOHOL FROM CANE SUGAR," and repeats "the cleaner twist on hard seltzer."

*See*, *supra*; *see also* **Exhibit 1-5 to 1-12** [Spiked Product Images].

c. **Sparsity.** The Challenged Representations are not hidden in a sea of information; rather, each panel, other than the panel containing regulatory required information, like the nutritional facts or identification of the manufacturer, contain scant information about the Products, largely limited to the brand name ("Spindrift"), identification of the "real" fruit that flavors the Products (e.g., Blood Orange Tangerine), the Products' size (e.g., "12 FL OZ," or "8 cans"), and only few claims about the Products' other attributes.

(a) For example, the only prominent or front-facing claims on the Sparkling Water Products' labels or packaging, other than the Sparkling Representation and its reinforcing statements or imagery, are limited to the Product's size and the fact that it is unsweetened.

(b) Similarly, the only prominent or front-facing claims on the Spiked Product's labels and packaging, other than the Spiked Representation and its reinforcing statements or imagery, are limited to claims about the Product's size; and, at times, the Product's caloric content, that the Product's alcohol came from can sugar, and that the Product is ultra filtered.

*See* **Exhibit 1** [Product Images].

d. **Typeface.** The Challenged Representations stand out from the scant additional information contained on the Product's panels, prominently displayed with a bold

and large typeface, clear and legible font, and highly visible lettering in colors that starkly contrast with the Products' background. *See* **Exhibit 1** [Product Images].

e. **Imagery.** Defendant uses imagery of different fruits to reinforce the Challenged Representations on the Sparkling Water Products. *See* **Exhibit 1-1** (oranges or tangerines); **Exhibit 1-2** (cucumbers); **Exhibit 1-3** (mangos and oranges); **Exhibit 1-4** (pineapples).

In this way, Defendant uses the Challenged Representations and the carefully designed labels and packaging, including the Challenged Representations' placement, repetition, and typeface, alongside the sparsity of competing information and abundance of reinforcing imagery, to perpetuate the false notion that the Products are only composed of sparkling water or spiked sparkling water and real fruit. The net-effect or net-impression on consumers viewing the Products' labels or packaging is that the Products contain only those two ingredients: sparkling water and real squeezed fruit, or spiked sparkling water and real squeezed fruit, and to the exclusion of any artificial or synthetic flavoring agents and/or preservatives.

18.     **Sparkling Water Products Website.**[16] Defendant emphasizes the Sparkling Representations in its advertising of the Products as part of its marketing campaign and brand strategy to identify Sparkling Water Products as solely containing two ingredients: sparkling water and real squeezed fruit. Not only has Defendant labeled and packaged the Sparkling Water Products with the Challenged Representations, but Defendant engaged in a marketing campaign initiated before and continuing throughout the Class Period that repeats and reinforces the Sparkling Representation. Defendant's marketing campaign and brand strategy is evidenced by its www.drinkspindrift.com website. For example:

a. **Drink Spindrift Home.** Currently, on the homepage of Defendant's official brand website for the Sparkling Water Products, Defendant showcases numerous images of the Products with the Challenged Representations. **Exhibit 2-a** [Dec. 2022 Homepage]. Defendant continuously reinforces the Challenged Representations by touting: "***Real fruit. Really. Spindrift is America's first sparkling water made with just real squeezed fruit***. It's a difference you can taste – and see. Literally … Take your pick of ***real squeezed fruit*** … The best ingredients. Making a delicious product requires the best ingredients. We source the best-tasting fruit and let it shine. ***Real, squeezed***, and never-from-concentrate … Quality is everything to us. We're obsessed with entire creation process, from tasting the fruit to sampling

---

[16] Between June 2022 and Present, Defendant made changes to its website for the Sparkling Water Products. Accordingly, Plaintiff cites Exhibit 2 for references made to statements from Defendant's website in December 2022, and cites Exhibit 3 for references made to statements from Defendant's website in June 2022.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

each can to sharing it with you." *See id.* (emphasis added). In June 2022, Defendant similarly showcased numerous images of its Products set against imagery of real fruits. **Exhibit 3-a** [June 2022 Homepage]. Defendant also touted, "***real fruit***. Really. Why is most 'fruit flavored' sparkling water clear? Have you ever seen a clear blackberry? ***Spindrift is made with real fruit***. It's a difference you can taste – and see … a bold taste. What if sparkling water tasted like real fruit? Spindrift has a unique, delicious taste that only ***real fruit*** can deliver. Light, bright, slightly sweet, and a little pulpy … the best ingredients. Making a delicious product required the best ingredients. We source the highest-quality, best-tasting fruit from family farms around the US … The first batch of Spindrift was created in our founder's kitchen with a hand-juice. Today, the Spindrift recipes are exactly the same. We still taste every single batch. We just use a bigger juicer." *Id.* (emphasis added).

b. **What's Inside.** Currently, on the What's Inside webpage, Defendant claims "[i]t's what's inside that counts … Taste is everything. Our philosophy is simple: taste is everything. To us, nothing tastes better than ***real fruit***. So we go all-out to source the best-tasting real fruit, keep it delicious, and let it shine in everything we make." **Exhibit 2-b** [Dec. 2022 What's Inside] (emphasis added). Furthermore, Defendant boasts that "***REAL FRUIT TASTES BETTER***." *Id.* (emphasis added). Defendant attempts to differentiate its Products from its competitors by claiming that "[w]hen most people think of flavored sparkling water, they probably envision a bottle of hyper-carbonated, clear liquid with a sugary-sweet smell and nothing listed on the ingredients label. Just the words 'natural flavors' or 'essences' – made by flavor companies who won't reveal what they use to get the tastes they want. Complicated. So we decided to skip all that. We want our product to taste like fruit (not just the essence of fruit), so we use actual ***real fruit*** in every can." *Id.* (emphasis added). Defendant again reinforces the Challenged Representations by stating, "***Yup, that's it***…We think ***real fruit*** tastes better®. We hope you like it, too." *Id.* (*emphasis added*). In June 2022, Defendant similarly touted "what's inside. ***America's first sparkling water made with just real squeezed fruit. Yup, that's it***." **Exhibit 3-b** [June 2022 What's Inside] (*emphasis added*). Defendant also attempted to differentiate its Products from competitors by stating, "[w]hen most people think of flavored sparkling water, they probably envision a bottle of hyper-carbonated, clear liquid with a sugary-sweet smell and nothing listed on the ingredients label. No calories, no sugars, no … actual ingredients. Just the words 'natural flavors.' What are 'natural flavors?' No one really knows. But we do know that scientists have gotten pretty good at stimulating the taste of just about everything. By using a combination of chemicals, you can replicate any flavor you like. And you can add it into carbonated water. But it still doesn't taste like real fruit … ***yup, that's it***. Since everyone started putting 'natural' on their labels, we've lost sight of what the word even means…So we decided to skip all that. We know what fruit is. We knew that, if we worked at it long enough, we'd figure out how we could skip using any 'flavors' and just use ***real squeezed fruit***. Today, we're proud to say that all our products are ***just a few real, simple ingredients***. Thus, ***the "yup, that's it" you'll see on our cans***." *Id.* (*emphasis added*). Notably, Defendant also emphasized that "***Spindrift is the first sparkling water made with only first squeezed fruit***. So, when you pour Spindrift, you'll see it is colorful because fruit has color." *Id.* (emphasis added).

c. **Our Story.** Currently on Defendant's Our Story Webpage, Defendant touts that the Products are "[l]ight, bright, and slightly pulpy." **Exhibit 2-c** [Dec. 2022 Our Story]. Defendant once again emphasizes, "***Spindrift is America's first sparkling water made with just real squeezed fruit. Yup, that's it***." *Id.*; **Exhibit 3-c** [June 2022 Our Story] (*emphasis added*). Defendant further states, "[a]t Spindrift

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

Beverage Co., we celebrate the amazing taste of *real, simple, ingredients* every day. Because we think real food deserves a real drink." *Id.* (*emphasis added*). Furthermore, Defendant again states, in bold font, "***REAL FRUIT TASTES BETTER***." **Exhibit 2-c** [Dec. 2022 Our Story] (emphasis added).

d. **Our Farmers and Our Fruit.**[17] In June 2022, on Defendant's Our Farmers and Our Fruit webpage, Defendant once again boasted that "***real fruit is at the heart*** of the Spindrift Difference." Defendant also detailed how it sources the fruit from farms all over the country, Defendant emphasizes this with a map of the United States along side fruit imagery. **Exhibit 3-d** [June 2022 Our Farmers and Fruit] (emphasis added).

e. **Frequently Asked Questions.** Currently on the Frequently Asked Questions webpage, Defendant again reiterates that "***Spindrift is the first and only sparkling water made with real fruit.***" **Exhibit 2-d** [Dec. 2022 FAQs] (*emphasis added*). Similarly, Defendant previously posed the question: "What are natural flavors? And why don't you use them in Spindrift?" *Id.;* **Exhibit 3-e** [June 2022 FAQs]. Defendant answered this question by stating that it wants "to be as ***honest and simple*** as possible with our ingredients ***and the taste of fresh, real fruit is unparalleled.*** In the beginning, like many companies, we used natural flavors in some products in order to guarantee taste from one batch to the next. Our natural flavors come from real fruit and berries such as carrot and blackcurrant. But we wanted to be even simpler and more transparent with our products, so we decided to reformulate all our products to remove natural flavors and use even more fruit. Today every Spindrift is made of ***only real fruit + sparkling water (that's it!).***" *Id.* (emphasis added).

f. **In the Press.** Defendant's In the Press webpage showcases numerous news websites and companies that further advertises the Products as solely containing sparkling water and real squeezed fruit. Some of the advertisement snippets included: "***Spindrift is the only flavored seltzer made with actual fruit.*** Not fruit flavoring like the other brands, but real, whole fruit … Spindrift uses fresh fruit juice, with the pulp to prove it … ***you won't find any artificial ingredients*** or added sugars in these pretty cans." **Exhibit 2-e** [Dec. 2022 In the Press] (emphasis added); *see also* **Exhibit 3-f** [June 2022 In the Press] (emphasis added).

g. **Blog Posts.** Further, Defendant publishes various blog posts highlighting the importance of simple and clean ingredients in its products, specifically the Products at issue. *See* **Exhibit 2-f** [Dec. 2022 The Drift Blog Post Homepage]; **Exhibit 2-g** [Our Ingredients are simple, but making our product is anything but] ("At Spindrift, our focus is ***quality, real ingredients*** and creating a delicious product that tastes incredible. To accomplish this, we let real fruit guide us. We believe in being ***transparent about what goes into our product***—and, just as importantly—being transparent with our Drifter community.") (emphasis added); **Exhibit 2-h** [Introducing Blood Orange Tangerine] ("With a multi-dimensional and almost berry-like depth that comes from ***real squeezed*** blood oranges that is perfectly highlighted by the bright, sweetness from ***real squeezed*** tangerines—the taste is anything but oidinary.") (emphasis added); **Exhibit 2-i** [The Clean Slate Café] ("We've long believed that ***simple, real ingredients*** are the way to go.") (emphasis added); **Exhibit 2-j** [Real fruit, never from concentrate] ("[W]e use real juice, never from concentrate…we like to keep it ***simple and delicious***…We keep processing to a minimum when we make Spindrift. ***When fruit is your only***

---

[17] Defendant has since deleted this webpage (e.g., this webpage does not currently exist), but similar information regarding the use of local farmers appears on other current webpages. *See generally* **Exhibit 2-b** [Dec. 2022 What's Inside].

*ingredient*, you want to let it speak for itself.") (emphasis added); **Exhibit 2-k** [Real Ingredients are Everything] ("***Real Ingredients*** are everything…Now, Spindrift is real simple; *it's real fruit + sparkling water*. As more people look carefully at the labels on their food and beverages, we're proud to stand by ours…*We're fruit + carbonated water*. *Real fruit tastes better*. We're excited to talk more about that; what we put into our products because it's **simple and delicious**.") (emphasis added); **Exhibit 2-l** [We're Doubling Down on Real Fruit] (blog post describing Defendant's shift away from natural flavors: "[i]n fact we've decided to double down on our commitment to *taste, transparency, and real, simple ingredients* by removing all natural flavors (or essences) from our unsweetened sparkling waters. ***Now, each and every can of Spindrift is made of only sparkling water and real fruit. That's it…We want to be as honest and simple as possible with our ingredients…Now we can say Spindrift = sparkling water + real fruit. And nothing else. Yup, that's it.***") (emphasis added).

19.    **Spiked Products Website.** Defendant emphasizes the Spiked Representations in its advertising of the Products as part of its marketing campaign and brand strategy to identify Spiked Products as solely containing two ingredients: spiked sparkling water and real squeezed fruit. Not only has Defendant labeled and packaged the Spiked Products with the Challenged Representations, but Defendant engaged in a marketing campaign initiated at the launch of Spiked Products and continuing through the Class Period that repeats and reinforces the Spiked Representation. Defendant's marketing campaign and brand strategy is evidenced by its https://www.spindriftspiked.com/ website. For example:

a.    **Homepage.** On the homepage of Defendant's Spiked Sparkling Water Homepage, Defendant includes images of the Products with the Challenged Representations. Defendant reinforces the Challenged Representations by including the following language, "the real spiked sparkling with nothing to hide … *real squeezed fruit* … *nothing artificial*." **Exhibit 4-a** [Spiked Homepage] (emphasis added); *see also* **Exhibit 4-b** [Spiked] (same).

b.    **The Story.** On The Story Webpage, Defendant provides background on its spiked sparkling water products. **Exhibit 4-c** [The Story] ("We like our drinks like we like our fruit. Real….Spindrift—*America's first sparkling water made with real squeezed fruit* and its company namesake—was born….Think of Spiked as the sequel to the Spindrift story….*With sparkling water, real squeezed fruit*, and 4% alcohol from ultra-filtered fermented cane suage, Spiked is the Spindrift you already love, plus a bit of ABV." *Id.* (emphasis added). Defendant again attempts to differentiate its Spiked Products from its competitors by stating, "Spiked is different from other hard seltzers. Instead of artificial flavors, sweeteners, additives, essences, or concentrates, we make Spiked *with real ingredients* and we put it all on the label. *Simple and delicious*, you can feel great about enjoying Spiked poured over ice or chilled and right from the can." *Id.* (emphasis added).

c.    **Frequently Asked Questions.** Currently on the Frequently Asked Questions webpage, Defendant again reiterates that "***Spindrift Spiked is made with sparkling water, alcohol from fermented cane sugar and real squeezed fruit. Yup, that's it*** … Spindrift Spiked *does not contain any artificial or natural flavors*." **Exhibit 4-d** [Spiked FAQs] (emphasis added) ("Spindrift Spiked is our

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*cleaner* twist on hard seltzer—for those who choose to enjoy an alcoholic beverage that has nothing to hide, ***and all the flavor from real squeezed fruit***.") (emphasis added).

d.  **Blog Posts.** Further, Defendant publishes various blog posts highlighting the importance of simple and clean ingredients in its products, specifically the Products at issue. *See* **Exhibit 2-m** [Spindrift Spiked. Finally.] ("We are super excited to share with you that we've cracked the code on a new, delicious addition to our family. Introducing…Spindrift Spiked – *a radically clean*, ultra-delicious, low alcohol sparkling water made only from ***real ingredients***….So we've taken the process that we used to develop Spindrift Sparkling Water: *all real ingredients*, cold processing, *no synthetics*, delicious – and introduced a low level of alcohol made from fermented cane sugar at a social 4% ABV.") (emphasis added).

20.  **Social Media Representations.** Defendant continuously uses deceptive marketing techniques to falsely portray its Products with the Challenged Representations, emphasizing that the Products are only made with sparkling water or spiked sparkling water and real squeezed fruit, taking advantage of social media platforms like Instagram, Twitter, Facebook, and Pinterest. For example:

a.  **Spindrift Sparkling Water Products Instagram.** Defendant's Instagram profile for the Sparkling Water Products markets and advertises the products as "sparkling water + real squeezed fruit," emphasizing the Challenged Representations, repeatedly using the hashtag "#yupthatsit." Examples are depicted below:



CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265





CLASS ACTION COMPLAINT

b.  **Spindrift Spiked Products Instagram Profile.** Defendant's Instagram profile for the Spiked Products markets and advertises the products as "sparkling water, alcohol from cane sugar, & real squeezed fruit," emphasizing the Challenged Representations, and repeatedly using the hashtag "#yupthatsit." Examples are depicted below:



spindriftspiked    Message    Follow

146 posts    40.4K followers    87 following

Spindrift Spiked
It's Spindrift, Spiked. Just sparkling water, alcohol from cane sugar & real squeezed fruit. #yupthatsit [21+ to follow]
linktr.ee/spindriftspiked

**Webpage: @spidriftspiked
URL: https://www.instagram.com/spindriftspiked/
Date Captured: 6/24/2022**



**Webpage: @spindriftspiked
URL: https://www.instagram.com/p/Ch0A7GoM7aj/
Date Captured: 12/19/2022**

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265



**Webpage: @spindriftspiked**
**URL: https://www.instagram.com/p/Cdy-N56uUXZ/**
**Date Captured: 12/19/2022**

**Webpage: @spindriftspiked**
**URL: https://www.instagram.com/p/CMcSWkCs7_D/**
**Date Captured: 12/19/2022**

CLASS ACTION COMPLAINT

<div style="text-align: left; writing-mode: vertical;">Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265</div>

c. **Spindrift Sparkling Water Products Twitter Profile.** Defendant's official Twitter profile for its Sparkling Water Products markets and advertises the Products with the Challenged Representations, further emphasizing that it "make[s] sparkling water that tastes like real fruit because its made with real fruit." In June 2022, Defendant also used the hashtag "#yupthatsit" in its bio. Examples are depicted below:





Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

d. **Spindrift Spiked Products Twitter Profile.** Defendant's official Twitter account for the Spiked Products markets and advertises the products with the Challenged Representations. Examples are depicted below:



**Webpage: @SpindriftSpiked**
**URL: https://twitter.com/spindriftspiked**
**Date Captured: 6/24/2022**

**Webpage: @SpindriftSpiked**
**URL:**
**https://twitter.com/spindriftspiked**
**Date Captured: 12/19/2022**

/ / /

CLASS ACTION COMPLAINT

← **Tweet**



**Spindrift Spiked**
@spindriftspiked                                    ...

Our favorite thing about spiked sparkling water with real fruit is that it tastes like spiked sparkling water with real fruit.

5:35 PM · Sep 7, 2022

2 Likes

**Webpage: @SpindriftSpiked**
**URL:**
**https://twitter.com/spindriftspiked/status/1567672867290062849**
**Date Captured: 12/19/2022**



**Spindrift Spiked**
@spindriftspiked                                    ...

Just us or are these @horizonbeverage trucks unusually attractive? Send us pics if you see them delivering the goods around MA & RI!

7:32 AM · Jun 8, 2022 from Massachusetts, USA

1 Retweet   1 Quote Tweet   9 Likes

**Webpage: @SpindriftSpiked**
**URL:**
**https://twitter.com/spindriftspiked/status/1534543946747203584**
**Date Captured: 12/19/2022**

-29-

CLASS ACTION COMPLAINT

e.   **Spindrift Sparkling Water Products Facebook Screenshot.** Defendant's Facebook account for the Sparkling Water Products also markets and advertises the Products with the Challenged Representations. Further, on Defendant's "About" Page, Defendant boasts, "[a]t Spindrift, we make sparkling water with real, squeezed fruit. Yup, that's it!" Examples are depicted below:



Webpage: Spindrift Sparkling Water
URL: https://www.facebook.com/drinkspindrift
Date Captured: 12/19/2022

f.  **Spindrift Spiked Facebook Screenshot.** Defendant also has a Facebook account for the Spindrift Spiked Products and again markets the Products with the Challenged Representations, emphasizing that the Products are made only of "sparkling water, alcohol from cane sugar & real squeezed fruit. #yupthatsit," as depicted below:



g.  **Pinterest Screenshot.** Defendant's Pinterest account also advertises and markets the Products with the Challenged Representations, once again emphasizing that the Products are "[j]ust sparkling water & real squeezed fruit. Yup, that's it."



# Spindrift Sparkling Water

🌐 **spindriftfresh.com** · @drinkspindrift · Just sparkling water & real squeezed fruit. Yup, that's it.

**782 followers** · **57 following**



Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

21. **Third-Party Retailer Representations.** Defendant continuously advertises and markets the Products with the Challenged Representations to falsely portray that the Products only consist of water (sparkling or spiked) and real squeezed fruit, taking advantage of Third-Party Retail Platforms like Amazon and Drizly. For example:

a. **Amazon Advertisements.** Defendant maintains an Amazon Storefront and continues to advertise and market the Products with the Challenged Representations, emphasizing that Defendant uses "real fruit. really." Further, Defendant includes a video advertisement, in which the Chief Executive Officer claims that "if you're going to stand for sparkling water and real ingredients, **it has to be genuine, has to be real, and you have to be able to stand behind your product and the ingredients.**" The video is also titled with the Challenged Representations: "JUST SPARKLING WATER & REAL SQUEEZED FRUIT. YUP, THAT'S IT." Examples are depicted below:



Webpage: Spindrift Storefront
URL: https://www.amazon.com/stores/Spindrift/page/F0370335-6722-4A85-9DC3-169A57E0CFFC?ref_=ast_dp_bln_nofrnas_sto&store_ref=bl_ast_dp_nofrnas_sto
Date Captured: 6/24/2022

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265



just sparkling water & real squeezed fruit. yup, that's it.

Spindrift Beverage Co., Inc.

Webpage: Spindrift Storefront
URL: https://www.amazon.com/stores/Spindrift/page/F0370335-6722-4A85-9DC3-169A57E0CFFC?ref_=ast_dp_bln_nofrnas_sto&store_ref=bl_ast_dp_nofrnas_sto
Date Captured: 6/24/2022

D.  **Plaintiff and Reasonable Consumers Were Misled by the Challenged Representations into Buying the Products, to Their Detriment, Consistent with Defendant's Deliberate Marketing Scheme to Exact a Premium for the Falsely Advertised Products**

22.  **Products.** Defendant manufactures, markets, promotes, advertises, labels, packages, and sells sparkling water and spiked sparkling water beverages—specifically, Spindrift® brand Sparkling Water Products and Spiked Products—each of which displays the Challenged Representations on the Products' front-facing labels and packaging and contain MCA as an ingredient. *See, supra*, ¶ 4 (identifying Products).

23.  **The Challenged Representations.** On the Products' labeling and packaging, Defendant prominently, conspicuously, and repeatedly displays the Challenged Representations—

specifically, "**SPARKLING WATER & REAL SQUEEZED FRUIT**, *yup, that's it*" (*see* **Exhibit 1-1 to 1-4** [Product Images for Spindrift® *Sparkling Water*]) and "**spiked sparkling water. Real squeezed [fruit]. YUP THAT'S IT**" (*see* **Exhibit 1-5 to 1-12** [Product Images for Spindrift® *Spiked Sparkling Water*]). Defendant also uses statements and imagery to reinforce the Challenged Representations throughout the Products' labels and packaging and Defendant's advertising campaign and brand strategy to differentiate the Products as only contain two types of ingredients—sparkling water or spiked sparkling water and real squeezed fruit.

24.    **Reasonable Consumer's Perception.** The Challenged Representations, in isolation or combined with Defendant's pervasive marketing campaign and brand strategy, lead reasonable consumers, like Plaintiff, into believing that the Products conform to the Challenged Representations. More specifically, reasonable consumers interpret the Challenged Representations to mean that the Products only contain two types of ingredients: sparkling water or spiked sparkling water and real squeezed fruit, to the exclusion of any synthetic or artificial flavoring agents and preservatives, like manufactured citric acid. Indeed, common-sense dictionary definitions for "real" are consistent with the reasonable consumer's perception that the sparkling water and spiked sparkling water beverages only contain actual fruit and not any artificial or synthetic flavoring additives or preservatives.

a.    The Merriam Webster dictionary defines "real" as, *inter alia*, "not artificial," "not artificial or fake," and "actual," and provides synonyms like "authentic" and "genuine." MERRIAM WEBSTER, *Real*, at https://www.merriam-webster.com/dictionary/real (accessed 12/23/2022).

b.    The Cambridge Dictionary defines "real" as, *inter alia*, "being what it appears to be and not false," "(especially of foods) produced using traditional methods and without artificial substances," and "being what it appears to be; genuine." CAMBRIDGE DICTIONARY, *Real*, at https://dictionary.cambridge.org/us/dictionary/english/real (accessed 12/23/2022).

c.    The Free Dictionary defines "real" as, *inter alia*, "Genuine and authentic; not artificial," "Free of pretense[ or] falsehood," "true; actual; not false," "not artificial or simulated; genuine," "(Cookery) (of food, etc) traditionally made and having a distinct flavour," "the real thing the genuine article, not an inferior or mistaken substitute," "being actually such; not merely so-called," "genuine; authentic," "no less than what is stated; worth of the name," "being or reflecting the . . . genuine character of something," "true, actual, genuine," "authentic, bona fide," "Not counterfeit or copied," "not imitation; genuine," "actual," and explains "You . . . use real to say that a substance or object is genuine and not artificial." FREE DICTIONARY, *Real*, at https://www.thefreedictionary.com/real (accessed 12/23/2022) (emphasis removed).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

d. The Collins Dictionary defines "real" as, *inter alia*, "A material or object that is real is natural or functioning, and not artificial or an imitation," "actual, true," "authentic; genuine," "being actually such; not merely so-called," "genuine; not counterfeit, artificial, or imitation; authentic," "true; actual; not false," "not artificial or simulated; genuine," "(of food, etc) traditionally made and having a distinct flavour," and explains "You can use real to emphasize a quality that is genuine and sincere." COLLINS DICTIONARY, *Real*, at https://www.collinsdictionary.com/us/dictionary/english/real (accessed 12/23/2022).

e. The Oxford Learner's Dictionaries define "real" as, *inter alia*, "true/not false," "not false or artificial," and "actual or true." OXFORD LEARNER'S DICTIONARIES, *Real*, at https://www.oxfordlearnersdictionaries.com/us/definition/english/real_1 (accessed 12/23/2022).

25. **Materiality.** The Challenged Representations are material to reasonable consumers, including Plaintiff, in deciding to buy the Products. Specifically, the simple and clean ingredient list—containing only sparkling water or spiked sparkling water and real fruit, to the exclusion of artificial or synthetic flavoring agents and preservatives—is important to consumers and motivates them to buy the Products.

26. **Reliance**. The Class, including Plaintiff, reasonably relied on the Challenged Representations in deciding to purchase the Products as the Challenged Representations, including reinforcing claims and imagery, are displayed on all or nearly all sides of Products' labels and packaging, including the front-facing primary display panel, and the implicit or explicit promise of containing only two types of ingredients—sparkling water or spiked sparkling water and real fruit, to the exclusion of artificial or synthetic flavoring agents and preservatives (like MCA)—is material to reasonable consumers of the Products.

27. **Falsity**. The Challenged Representations are false and deceptive because the Products contain ingredients other than sparkling water or spiked sparkling water and real squeezed fruit. Specifically, the Products contain manufactured citric acid, which is an artificial or synthetic flavoring agent and preservative that is not squeezed from real fruit, let alone consists of carbonated water or alcohol.

28. **Consumers Lack Knowledge of Falsity**. Consumers, including Plaintiff, do not know, and have no reason to know, at the time of purchase, that the Products' Challenged Representations are false, misleading, deceptive, and unlawful. That is because consumers, including Plaintiff, do not work for Defendant and therefore have no personal knowledge of the

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

actual ingredients used to make the Products or how those ingredients are made, including whether the citric acid is squeezed from fruits or synthesized or artificially created from black mold cultivated from corn syrup or root vegetables. Additionally, average consumers do not have the specialized knowledge of a chemist or product-developer. Thus, reasonable consumers, like Plaintiff, cannot discern from the Products' ingredient disclosures whether ingredients, like "citric acid," are sourced from fruit or not. Furthermore, reasonable consumers, like Plaintiff, do not ordinarily review subsidiary or fine print information regarding consumer products—whether contained on the products' labels, packaging, or in advertisements, including websites.[18]

29.     **Defendant's Knowledge**. Defendant knew, or should have known, that the Challenged Representations were false, misleading, deceptive, and unlawful, at the time that Defendant manufactured, marketed, advertised, labeled, and sold the Products using the Challenged Representations to Plaintiff and the Class. Defendant intentionally and deliberately used the Challenged Representations, alongside its massive marketing campaign and brand strategy, to cause Plaintiff and similarly situated consumers to buy the Products believing that the Challenged Representations are true.

   a. **Knowledge of Falsity.** Defendant marketed the Products with the Challenged Representations, but Defendant opted to formulate and manufacture them in a manner that does not conform to those representations. Specifically, Defendant advertised, labeled, and packaged the Products with the Challenged Representations, but, instead of using only ingredients that are sparkling water or spiked sparkling water and real squeezed fruit, Defendant chose to make the Products with manufactured citric acid. MCA is an artificial or synthetic flavoring agent and preservative that is not squeezed from real fruit, let alone consists of carbonated water or alcohol. Instead, MCA is synthesized from black mold cultivated from corn syrup or vegetables.

---

[18] Grunert, Klaus, et. al, *Nutrition knowledge, and use and understanding of nutrition information on food labels among consumers in the UK*, 55 Appetite 177, at 179-181 (2010) available at https://reader.elsevier.com/reader/sd/pii/S0195666310003661?token=95E4146C1BB7D7A7C9A4 87F22F0B445BD44499550086E04870765EBE116ED32DBFE3795E60B69C75831563CD1BC6 655A&originRegion=us-east-1&originCreation=20220720162546 (last accessed July 20, 2022); Grunert, Klaus, et. al, *Use and understanding of nutrition information on food labels in six European countries*, 18(3) Journal of Public Health 261, 261, 263, 266 (2010), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2967247/ (last accessed July 20, 2022); Benn, Yael, et al., *What information do consumers consider and how do they look for it, when shopping for groceries online*, 89 Appetite 265, 265, 270 (2015), available at https://www.sciencedirect.com/science/article/pii/S0195666315000422#bib0060 (last accessed Jul. 20, 2022).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

b. **Knowledge of Reasonable Consumers' Perception.** Defendant knew, or should have known, that the Challenged Representations would lead reasonable consumers into believing that the Products were composed entirely of sparkling water or spiked sparkling water and real squeezed fruit—i.e., the Products do not contain artificial or synthetic flavoring agents and preservatives (like MCA). Not only has Defendant labeled and packaged each of the Products with the Challenged Representations and executed a long-standing brand strategy and advertising campaign to identify the Products with the Challenged Representations, but Defendant also has an obligation under section 5 of the Federal Trade Commission Act, codified at 15 U.S.C. §§ 45, to evaluate its marketing claims from the perspective of the reasonable consumer. That means Defendant was statutorily obligated to consider whether the Challenged Representations, be it in isolation or conjunction with its marketing campaign, would mislead reasonable consumers into believing that the Products were entirely composed of sparkling or spiked sparkling water and real squeezed fruit—devoid of any artificial or synthetic flavoring agents and preservatives (like MCA). Thus, Defendant either knew the Challenged Representations are misleading before it marketed the Products to the Class, including Plaintiff, or Defendant would have known that they are deceptive had Defendant complied with its statutory obligations.

c. **Knowledge of Materiality.** Defendant knew or should have known that the Challenged Representations are material to consumers. ***First***, manufacturers and marketers, like Defendant, generally reserve the front primary display panel of labels of packaging on consumer products for the most important and persuasive information, which they believe will motivate consumers to buy the products. Here, the conspicuousness of the Challenged Representations on the Products' labels and packaging demonstrates Defendant's awareness of its importance to consumers and Defendant's understanding that consumers prefer and are motivated to buy products that conform to the Challenged Representations. ***Second***, manufacturers and marketers repeat marketing claims to emphasize and characterize a brand or product line, shaping the consumers' expectations, because they believe those repeated messages will drive consumers to buy the Product. Here, the constant, unwavering use of the Challenged Representations on the Products, advertisements, and throughout Defendant's marketing campaign, evidence Defendant's awareness that the falsely advertised Product-attribute is important to consumers. It also evidences Defendant's intent to convince consumers that the Products conform to the Challenged Representations and, ultimately, drive sales. ***Third***, Defendant unabashedly has repeatedly admitted that simple ingredient lists motivate consumers in their purchasing decisions. **Exhibit 2-c** [Dec. 2022 Our Story] ("At Spindrift, our favorite thing – besides real fruit – is engaging with those who drink Spindrift: our community of Drifter. They're real, authentic, and 100% unabashedly themselves. They celebrate quality and craft. Like us, they always aspire to be just *a little* better. They try to make life better and more fun for others. They savor the good things in life.").

d. **Defendant's Continued Deception, Despite Its Knowledge.** Defendant, as the manufacturer and marketer of the Products, had exclusive control over the Challenged Representations' inclusion on the Products' labels, packaging, and advertisements—i.e., Defendant readily and easily could have stopped using the Challenged Representations to sell the Products. However, despite Defendant's knowledge of the Challenged Representations falsity, and Defendant's knowledge that consumers reasonably rely on the Challenged Representations in deciding to buy the Products, Defendant deliberately chose to market the Products with the Challenged Representations thereby misleading consumers into buying or otherwise overpaying for the Products. Thus, Defendant knew, or should have

known, at all relevant times, that the Challenged Representations misleads reasonable consumers, such as Plaintiff, into buying the Products to attain the product-attributes that Defendant falsely advertised and warranted. Indeed, notwithstanding Plaintiff's demand to Defendant to stop misleading consumers with the Challenged Representations, Defendant has continued to market the Products using the Challenged Representations. *See* **Exhibit 5** [Pre-Litigation Demand].

30.    **Detriment.** Plaintiff and similarly situated consumers would not have purchased the Products, or would not have overpaid a price premium for the Products, if they had known that the Challenged Representations were false and, therefore, the Products do not have the attribute claimed, promised, warranted, advertised, and/or represented. Indeed, similar competitor products that do not claim to be comprised of only two types of ingredients—sparkling water or spiked sparkling water and real fruit (to the exclusion of artificial or synthetic flavoring agents and preservatives)—sell for a lower retail price compared to the Products. For example:

**Carbonated Water Beverages w/ Fruit Flavoring: Pricing**[19]

| | | |
|---|---|---|
| Spindrift Sparkling Water Blood Orange Tangerine (8-Pack, 12 oz cans) | : | $6.99 |
| Spindrift Sparkling Water Mango Orange (8-Pack, 12 oz cans) | : | $6.99 |
| Spindrift Sparkling Water Pineapple (8-Pack, 12 oz cans) | : | $6.99 |
| La Croix Tangerine Core (8-Pack, 12 oz cans) | : | $4.49 |
| Bubly Mango (8-Pack, 12 oz cans) | : | $4.29 |
| Bubly Coconut Pineapple (8-Pack, 12 oz cans) | : | $4.29 |

/ / /

/ / /

/ / /

/ / /

/ / /

---

[19] The following pricing reflects non-sale pricing. *See, e.g.*, VONS, *Spindrift Sparkling Water* (***Blood Orange Tangerine***), at https://www.vons.com/shop/product-details.960188808.html (accessed 1/3/2022); VONS, *Spindrift Sparkling Water* (***Mango Orange***), at https://www.vons.com/shop/product-details.960293901.html (accessed 1/3/2022); TARGET, *Spindrift Sparkling Water* (***Pineapple***), at https://www.target.com/p/spindrift-pineapple-sparkling-water-8pk-12-fl-oz-cans/-/A-79314620#lnk=sametab; VONS, *La Croix Sparkling Water* (***Tangerine Core***), at https://www.vons.com/shop/product-details.970309094.html (accessed 1/3/2022); TARGET, *Bubly Sparkling Water* (***Mango***), at https://www.target.com/p/bubly-mango-sparkling-water-8pk-12-fl-oz-cans/-/A-53081705#lnk=sametab; TARGET, *Bubly Sparkling Water* (***Coconut Pineapple***), at https://www.target.com/p/bubly-coconut-pineapple-sparkling-water-8pk-12-fl-oz-cans/-/A-82259040#lnk=sametab.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

-38-

**Carbonated Water Alcoholic Beverages w/ Fruit Flavoring: Pricing**[20]

| | | |
|---|---|---|
| Spindrift Spiked Paradise Variety Pack (12-Pack, 12 oz cans) | : | $24.99 |
| Spindrift Spiked Stacation Variety Pack (12-Pack, 12 oz cans) | : | $24.99 |
| White Claw Variety Pack 1 (12-pack, 12 oz cans) | : | $19.99 |
| White Claw Variety Pack 2 (12-pack, 12 oz cans) | : | $19.99 |
| Topo Chico Variety Pack (12-Pack, 12 oz cans) | : | $17.99 |
| Truly Hard Seltzer Tropical Variety Pack (12-Pack, 12 oz cans) | : | $20.99 |

Accordingly, based on Defendant's material misrepresentations and omissions, reasonable consumers, including Plaintiff, purchased the Products to their detriment.

**E.**     **The Products are Substantially Similar**

31.     As described herein, Plaintiff purchased one or more Products identified above ("**Purchased Product(s)**"). *See*, *supra*, ¶ 8. The additional Products (collectively, the "**Unpurchased Products**") are substantially similar to the Purchased Product(s).

a.   **Defendant.** All Products are manufactured, sold, marketed, advertised, labeled, and packaged by Defendant.

b.   **Brand.**  All Products are sold under the same brand name: Spindrift®. Indeed, Defendant markets the Spiked Products as a variation of the Sparkling Water Products. *See* **Exhibit 4-c** [Spindrift Spiked - The Story] ("Think of Spiked as the sequel to the Spindrift Story….a spiked version of our product").

c.   **Purpose.** All Products are sparkling water beverages intended for human consumption.

d.   **Key Ingredients.** All Products are made from largely the same ingredients—specifically, sparkling water or spiked sparkling water, real squeezed fruit, and manufactured citric acid.

e.   **Marketing Demographics.**  All Products are marketed directly to consumers for personal use.

f.   **Challenged Misrepresentations.**  All Products contain the same Challenged Representations ("**SPARKLING WATER & REAL SQUEEZED FRUIT** *yup that's it*" and "**spiked sparkling water. real squeezed [fruit]. YUP THAT'S**

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

---

[20] The following pricing reflects non-sale pricing. *See*, *e.g.*, KEG N BOTTLE, *Spindrift Spiked Water* (***Paradise Variety Pack***), at https://kegnbottle.com/products/spindrift-paradise-pack-spiked-seltzer-12-pack-cans (accessed 1/3/2023); KEG N BOTTLE, *Spindrift Spiked Water* (***Stacation Variety Pack***), at https://kegnbottle.com/products/spindrift-spiked-seltzer-water-12-pack-variety?pr_prod_strat=copurchase&pr_rec_id=9b29d046a&pr_rec_pid=6552738496641&pr_ref_pid=6556418703489&pr_seq=uniform (accessed 1/3/2023); KEG N BOTTLE, *Whitleclaw* (***Variety Pack 1***), at https://kegnbottle.com/products/white-claw-variety-pack-no-1-12pk (accessed 1/3/2022); KEG N BOTTLE, *Whitleclaw* (***Variety Pack 2***), at https://kegnbottle.com/products/white-claw-variety-pack-no-2-12pk (accessed 1/3/2022); TARGET, *Topo Chico* (***Variety Pack***), at https://www.target.com/p/topo-chico-hard-seltzer-variety-pack-12pk-12-fl-oz-slim-cans/-/A-81815228#lnk=sametab; TARGET, *Truly Hard Seltzer* (***Tropical Variety Pack***), at https://www.target.com/p/truly-hard-seltzer-tropical-mix-pack-12pk-12-fl-oz-slim-cans/-/A-53980121#lnk=sametab.

**IT.**") conspicuously and prominently placed on the front label and packaging for the Products. *See* **Exhibit 1** [Product Images]. Defendant reinforces the Challenged Representations by repeating them, similar statements, and images of fruit on all or nearly all sides of the Products' packaging, reinforcing the same core marketing claim—that the Products only contain sparkling water or spiked sparkling water and real fruit, to the exclusion of synthetic or artificial flavoring agents and preservatives. *Id.* Defendant buttresses the Challenged Representations through a pervasive and consistent brand strategy and marketing campaign to identify the Spindrift® brand and the Products as sparkling or spiked sparkling waters that only contain real squeezed fruit (yup, that's it). *See* **Exhibit 2** [Dec. 2022 Digital Marketing - Sparkling Waters]; **Exhibit 3** [June 2022 Digital Marketing - Sparkling Waters]; **Exhibit 4** [Dec. 2022 Digital Marketing - Spiked Waters].

g. **Packaging.** All Products are packaged in similar packaging—using all white or all blue backgrounds, and bold styles/fonts/type face to draw the consumers' attention to Challenged Representations and reinforcing imagery and statements, providing scant competing information regarding only a few additional product-attributes (e.g., size, unsweetened, and at times ultra filtered or caloric content). *See* **Exhibit 1** [Product Images]. The Products share in common the same core marketing claims written on the Products' labels and packaging. *Id.*

h. **Misleading Effect.** The misleading effect of the Challenged Representations on consumers are the same for all Products—consumers are tricked into buying or otherwise over-paying a premium for Products that are composed of only sparkling water or spiked sparkling water and real squeezed fruit, but they receive Products that, contrary to the Products' labels and packaging, also contain manufactured citric acid (an artificial or synthetic flavoring agent and preservative).

## F.    No Adequate Remedy at Law

32.    **No Adequate Remedy at Law.** Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

a. **Broader Statutes of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. In addition, the statutes of limitations vary for certain states' laws for breach of warranty and unjust enrichment/restitution, between approximately 2 and 6 years. Thus, California Subclass members who purchased the Products more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL. Similarly, Nationwide Class members who purchased the Products prior to the furthest reach-back under the statute of limitations for breach of warranty, will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

b. **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes, for example, Defendant's overall unfair marketing scheme to promote and brand the Products with the Challenged Representations, across a multitude of media platforms, including the Products' labels and packaging, over a long period of time, in order to gain an unfair advantage over

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

competitor products and to take advantage of consumers' desire for products that comport with the Challenged Representations. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations and omissions made on the type of products at issue).  Thus, Plaintiff and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiff (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).  Similarly, unjust enrichment/restitution is broader than breach of warranty.  For example, in some states, breach of warranty may require privity of contract or pre-lawsuit notice, which are not typically required to establish unjust enrichment/restitution.  Thus, Plaintiff and Class members may be entitled to recover under unjust enrichment/restitution, while not entitled to damages under breach of warranty, because they purchased the products from third-party retailers or did not provide adequate notice of a breach prior to the commencement of this action.

c. **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to misrepresent the Products with the Challenged Representations. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of affirmative disclosures is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Products' Challenged Representations is not true and providing accurate information about the Products' true nature; and/or requiring prominent qualifications and/or disclaimers on the Products' front label concerning the Products' true nature.  An injunction requiring affirmative disclosures to dispel the public's misperception and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is *currently* unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiff's investigation have not yet completed, rendering injunctive relief all the more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future Product sales, and quantities of past/future Product sales.

d. **Public Injunction.** Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

e. **California vs. Nationwide Class Claims**. Violation of the UCL, FAL, and CLRA are claims asserted on behalf of Plaintiff and the California Subclass against Defendant, while breach of warranty and unjust enrichment/restitution are asserted on behalf of Plaintiff and the Nationwide Class. Dismissal of farther-reaching claims, such as restitution, would bar recovery for non-California members of the Class. In other words, legal remedies available or adequate under the California-specific causes of action (such as the UCL, FAL, and CLRA) have no impact on this Court's jurisdiction to award equitable relief under the remaining causes of action asserted on behalf of non-California putative class

members.

## VI.   CLASS ACTION ALLEGATIONS

33.   **Class Definition.** Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and all others similarly situated, and as members of the Classes defined as follows:

> All persons or entities that, within the applicable statute of limitations periods, purchased the Products in the United States, displaying the Challenged Representations on the Products' labels or packaging and containing manufactured citric acid, for purposes other than resale ("**Nationwide Class**"); and

> All persons or entities that, within four years prior to the filing of this Complaint through present, purchased the Products in California, displaying the Challenged Representations on the Products' labels or packaging and containing manufactured citric acid, for purposes other than resale ("**California Subclass**").

("Nationwide Class" and "California Subclass," collectively, "**Class**").

34.   **Class Definition Exclusions.** Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

35.   **Reservation of Rights to Amend the Class Definition.** Plaintiff reserves the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

36.   **Numerosity:** Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Nationwide Class consists of tens of thousands of purchasers (if not more) dispersed throughout the United States, and the California Subclass likewise consists of thousands of purchasers (if not more) dispersed throughout the State of California. Accordingly, it would be impracticable to join all members of the Class before the Court.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

37.     **Common Questions Predominate:** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

a.      Whether Defendant engaged in unlawful, unfair or deceptive business practices by advertising and selling the Products;

b.      Whether Defendant's conduct of advertising and selling the Products as only containing sparkling water and real fruit, creating the reasonable assumption that the Products' fruit flavoring is solely derived from real fruit, when they contain added artificial ingredients, such as citric acid, constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq*.;

c.      Whether Defendant used deceptive representations in connection with the sale of the Products in violation of Civil Code section 1750, *et seq*.;

d.      Whether Defendant represented that the Products have characteristics or quantities that they do not have in violation of Civil Code section 1750, *et seq*.;

e.      Whether Defendant advertised the Products with intent not to sell them as advertised in violation of Civil Code section 1750, *et seq*.;

f.      Whether Defendant's labeling and advertising of the Products are untrue or misleading in violation of Business and Professions Code section 17500, *et seq*.;

g.      Whether Defendant knew or by the exercise of reasonable care should have known its labeling and advertising was and is untrue or misleading in violation of Business and Professions Code section 17500, *et seq*.;

h.      Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

i.      Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

j.      Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

k.      Whether Plaintiff and the Class paid more money for the Products than they actually received;

l.      How much more money Plaintiff and the Class paid for the Products than they actually received;

m.      Whether Defendant's conduct constitutes breach of warranty;

n.      Whether Plaintiff and the Class are entitled to injunctive relief; and

o.      Whether Defendant was unjustly enriched by their unlawful conduct.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

38.   **Typicality**:  Plaintiff's claims are typical of the claims of the Class Members he seeks to represent because Plaintiff, like the Class Members, purchased Defendant's misleading and deceptive Products.   Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct.  Plaintiff's and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

39.   **Adequacy**: Plaintiff is an adequate representative of the Class he seeks to represent because his interests do not conflict with the interests of the Class Members Plaintiff seeks to represent. Plaintiff will fairly and adequately protect Class Members' interests and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

40.   **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a.   The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

b.   Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoy its ill-gotten gains;

c.   Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d.   When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e.   This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused to them by Defendant.

41.   **Inconsistent Rulings.** Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying

-44-

adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

42.    **Injunctive/Equitable Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

43.    **Manageability.** Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## VII.    CAUSES OF ACTION

### COUNT ONE

**Violation of California Unfair Competition Law**

**(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

**(*On Behalf of the California Subclass*)**

44.    **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

45.    **California Subclass.** This cause of action is brought pursuant to Business and Professions Code Section 17200, *et seq.*, on behalf of Plaintiff and a California Subclass who purchased the Products within the applicable statute of limitations.

46.    **The UCL.** California Business & Professions Code, sections 17200, *et seq.* (the **"UCL"**) prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

47.    **False Advertising Claims.** Defendant, in its advertising and packaging of the Products, made false and misleading statements and fraudulent omissions regarding the quality and characteristics of the Products—specifically, the Sparkling and Spiked Representation (i.e., that the Products are composed of only water and real squeezed fruit)—despite the fact the Products also contain citric acid (an artificial flavor and/or preservative). Such claims and omissions

appear on the label and packaging of the Products, which are sold at retail stores, point-of-purchase displays, and online.

48. **Defendant's Deliberately False and Fraudulent Marketing Scheme.** Defendant does not have any reasonable basis for the claims about the Products made in Defendant's advertising and on Defendant's packaging or labeling because the Products contain citric acid. Defendant knew and knows that the Products contain an ingredient that is not water (sparkling or spiked) and real squeezed fruit, specifically, citric acid, though Defendant intentionally advertised and marketed the Products to deceive reasonable consumers into believing that the Products contain only water (sparkling or spiked) and real squeezed fruit.

49. **False Advertising Claims Cause Purchase of Products.** Defendant's labeling and advertising of the Products led to, and continues to lead to, reasonable consumers, including Plaintiff, believing that the Products only contain water and real squeezed fruit, to the exclusion of other ingredients, such as citric acid (which is a artificial flavor and/or preservative).

50. **Injury in Fact.** Plaintiff and the California Subclass have suffered injury in fact and have lost money or property as a result of and in reliance upon Defendant's Challenged Representations—namely Plaintiff and the California Subclass lost the purchase price for the Products they bought from the Defendant.

51. **Conduct Violates the UCL.** Defendant's conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."  Cal. Bus & Prof. Code § 17200. In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

CLASS ACTION COMPLAINT

52.     **No Reasonably Available Alternatives/Legitimate Business Interests.** Defendant failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

53.     **Business Practice.** All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendant voluntarily alters its conduct or Defendant is otherwise ordered to do so.

54.     **Injunction.** Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiff and the members of the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling and advertising the sale and use of the Products. Likewise, Plaintiff and the members of the California Subclass seek an order requiring Defendant to disclose such misrepresentations, and to preclude Defendant's failure to disclose the existence and significance of said misrepresentations.

55.     **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the UCL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the California Subclass have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

56.     **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for violation of the UCL on behalf of Plaintiff and the California Subclass. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

the rights of Plaintiff and consumers as Defendant was, at all times, aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

### **"Unfair" Prong**

57. **Unfair Standard.** Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

58. **Injury.** Defendant's action of mislabeling the Products with the Challenged Representations does not confer any benefit to consumers; rather, doing so causes injuries to consumers, who do not receive products commensurate with their reasonable expectations, overpay for the Products, and receive Products of lesser standards than what they reasonably expected to receive. Consumers cannot avoid any of the injuries caused by Defendant's deceptive labeling and/or advertising of the Products. Accordingly, the injuries caused by Defendant's deceptive labeling and advertising outweigh any benefits.

59. **Balancing Test.** Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012).

60. **No Utility.** Here, Defendant's conduct of labeling the Products as solely consisting of sparkling water and real fruit—and thus the fruit flavoring solely deriving from real fruit and not

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

from artificial flavors—when the Products contain citric acid, a well-known artificial flavor, has no utility and financially harms purchasers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm.

61. **Legislative Declared Policy.** Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

62. **Unfair Conduct.** Defendant's labeling and advertising of the Products, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendant knew or should have known of its unfair conduct. Defendant's misrepresentations constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

63. **Reasonably Available Alternatives.** There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Sparkling and Spiked Representations.

64. **Defendant's Wrongful Conduct.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

65. **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practices of labeling the Products with the Challenged Representations.

66. **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products. Specifically, Plaintiff and the California Subclass paid for Products that were supposedly made with only water (sparkling or spiked) and real squeezed fruit, but instead purchased Products that contain citric acid, which is neither water nor real squeezed fruit (and is rather an artificial flavor and/or preservative). Plaintiff and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if

they had known that the Products' advertising and labeling were deceptive. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

**"Fraudulent" Prong**

67. **Fraud Standard.** The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

68. **Fraudulent & Material Challenged Representations.** Defendant used the Sparkling and Spiked Representations with the intent to sell the Products to consumers, including Plaintiff and the California Subclass. The Challenged Representations are false and Defendant knew or should have known of its falsity. The Challenged Representations are likely to deceive consumers into purchasing the Products because they are material to the average, ordinary, and reasonable consumer.

69. **Fraudulent Business Practice.** As alleged herein, the misrepresentations by Defendant constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

70. **Reasonable and Detrimental Reliance.** Plaintiff and the California Subclass reasonably and detrimentally relied on the material and false Challenged Representations to their detriment in that they purchased the Products.

71. **Reasonably Available Alternatives.** Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Sparkling and Spiked Representations.

72. **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

73. **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling the Products with the Sparkling and Spiked Representations.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

74. **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products. Specifically, Plaintiff and the California Subclass paid for Products that were supposedly made with only water (sparkling or spiked) and real squeezed fruit, but instead purchased Products that contain citric acid, which is neither water nor real squeezed fruit (and is rather an artificial flavor and/or preservative). Plaintiff and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

### "Unlawful" Prong

75. **Unlawful Standard.** The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

76. **Violations of CLRA and FAL.** Defendant's labeling of the Products, as alleged herein, violates California Civil Code sections 1750, *et seq.* (the "**CLRA**") and California Business and Professions Code sections 17500, *et seq.* (the "**FAL**") as set forth below in the sections regarding those causes of action.

77. **Additional Violations.** Defendant's conduct in making the false representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to their competitors. This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code sections 17200-17208. Additionally, Defendant's misrepresentations of material facts, as set forth herein, violate California Civil Code sections 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law.

78. **Unlawful Conduct.** Defendant's packaging, labeling, and advertising of the Products, as alleged herein, are false, deceptive, misleading, and unreasonable, and constitute unlawful conduct. Defendant knew or should have known of its unlawful conduct.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

79.    **Reasonably Available Alternatives.** Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Sparkling and Spiked Representations and/or omitting that the Products contained ingredients other than water (sparkling or spiked) and real squeezed fruit, specifically citric acid (an artificial and/or preservative).

80.    **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

81.    **Injunction.** Pursuant to Business and Professions Code Section 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising of the Products.

82.    **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products. Specifically, Plaintiff and the California Subclass paid for Products that were supposedly made with only water (sparkling or spiked) and real squeezed fruit, but instead purchased Products that contain citric acid, which is neither water nor real squeezed fruit (and is rather an artificial flavor and/or preservative). Plaintiff and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

## COUNT TWO

### Violation of California False Advertising Law

### (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

### (*On Behalf of the California Subclass*)

83.    **Incorporation by reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

84.    **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

85.    **FAL Standard.**   The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

86.    **False & Material Challenged Representations Disseminated to Public.** Defendant violated section 17500 when it advertised and marketed the Products through the unfair, deceptive, untrue, and misleading Sparkling and Spiked Representations disseminated to the public through the Products' labeling, packaging, marketing, and advertising.   These representations were false because the Products do not conform to them. The representations were material because they are likely to mislead a reasonable consumer into purchasing the Products.

87.    **Knowledge.** In making and disseminating the representations alleged herein, Defendant knew or should have known that the representations were untrue or misleading, and acted in violation of § 17500.

88.    **Intent to sell.** Defendant's Challenged Representations were specifically designed to induce reasonable consumers, like Plaintiff and the California Subclass, to purchase the Products.

89.    **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the FAL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

90.    **Punitive Damages.** Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving.  Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed

to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

## COUNT THREE

### Violation of California Consumers Legal Remedies Act

### (Cal. Civ. Code §§ 1750, *et seq.*)

### (*On Behalf of the California Subclass*)

91.    **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

92.    **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

93.    **CLRA Standard.** The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

94.    **Goods/Services.** The Products are "goods," as defined by the CLRA in California Civil Code §1761(a).

95.    **Defendant.** Defendant is a "person," as defined by the CLRA in California Civil Code §1761(c).

96.    **Consumers.** Plaintiff and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code §1761(d).

97.    **Transactions.** The purchase of the Products by Plaintiff and members of the California Subclass are "transactions" as defined by the CLRA under California Civil Code § 1761(e).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

98.    **Violations of the CLRA.** Defendant violated the following sections of the CLRA by selling the Products to Plaintiff and the California Subclass through the false, misleading, deceptive, and fraudulent Challenged Representations:

        a.    Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have."

        b.    Section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . [when] they are of another."

        c.    Section 1770(a)(9) by advertising the Products "with [the] intent not to sell them as advertised."

99.    **Knowledge.** Defendant's uniform and material representations and omissions regarding the Products were likely to deceive, and Defendant knew or should have known that its representations and omissions were untrue and misleading.

100.    **Malicious.** Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from consumers, including Plaintiff, to increase the sale of the Products.

101.    **Plaintiff Could Not Have Avoided Injury.** Plaintiff and members of the California Subclass could not have reasonably avoided such injury.  Plaintiff and members of the California Subclass were unaware of the existence of the facts that Defendant suppressed and failed to disclose, and Plaintiff and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

102.    **Causation/Reliance/Materiality.** Plaintiff and the California Subclass suffered harm as a result of Defendant's violations of the CLRA because they relied on the Challenged Representations in deciding to purchase the Products.  The Challenged Representations were a substantial factor. The Challenged Representations were material because a reasonable consumer would consider it important in deciding whether to purchase the Products.

103.    **Section 1782(d)—Prelitigation Demand/Notice.** Pursuant to California Civil Code, section 1782, more than thirty days prior to the filing of this complaint, on or about March 18, 2022, Plaintiff's counsel, acting on behalf all members of the Class, mailed a Demand Letter, via U.S.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

certified mail, return receipt requested, addressed to Defendant Spindrift Beverage Company, Inc. at its headquarters and principal place of business registered with the Massachusetts Secretary of State (55 Chapel Street, Ste. 401, Newton, MA 02458) and its registered agent for service of process (CT Corp. System, 330 N. Brand Blvd., Ste. 700, Glendale, CA 91203), which were delivered to those addresses on or about March 30, 2022 and March 22, 2022, respectively. *See* **Exhibit 5** [Pre-Lit Demand Letter].

104.   **Causation/Damages.**  As a direct and proximate result of Defendant's misconduct in violation of the CLRA, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of this Act in the form of damages, restitution, disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies.

105.   **Injunction.** Given that Defendant's conduct violated California Civil Code section 1780, Plaintiff and members of the California Subclass are entitled to seek, and do hereby seek, injunctive relief to put an end to Defendant's violations of the CLRA and to dispel the public misperception generated, facilitated, and fostered by Defendant's false advertising campaign. Plaintiff has no adequate remedy at law. Without equitable relief, Defendant's unfair and deceptive practices will continue to harm Plaintiff and the California Subclass. Accordingly, Plaintiff seeks an injunction to enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to section 1780(a)(2), and otherwise require Defendant to take corrective action necessary to dispel the public misperception engendered, fostered, and facilitated through Defendant's deceptive labeling of the Products with the Challenged Representations.

106.   **Punitive Damages.** Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was, at all times, aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff.  Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct.   Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant. Accordingly, Plaintiff seeks an award of punitive damages against Defendant.

## **COUNT FOUR**

### **Breach of Warranty**

### (***On Behalf of the Nationwide Class and California Subclass***)

107.   **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

108.   **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Class who purchased the Products within the applicable statute of limitations.

109.   **Express Warranty.** By advertising and selling the Products at issue, Defendant made promises and affirmations of fact on the Products' packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising constitute express warranties and became part of the basis of the bargain between Plaintiff and members of the Class and Defendant. Defendant purports, through the Products' labeling and advertising, to create express warranties that the Products, among other things, conform to the Challenged Representations.

110.   **Implied Warranty of Merchantability.** By advertising and selling the Products at issue, Defendant, a merchant of goods, made promises and affirmations of fact that the Products are merchantable and conform to the promises or affirmations of fact made on the Products' packaging and labeling, and through its marketing and advertising, as described herein. This labeling and

advertising, combined with the implied warranty of merchantability, constitute warranties that became part of the basis of the bargain between Plaintiff and members of the Class and Defendant—to wit, that the Products, among other things, conform to the Challenged Representations.

111. **Breach of Warranty.** Contrary to Defendant's express warranties, the Products do not conform to the Challenged Representations and, therefore, Defendant breached its warranties about the Products and their qualities.

112. **Causation/Remedies.** As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

113. **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for breach of warranty on behalf of Plaintiff and the Class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

## <u>COUNT FIVE</u>

### Unjust Enrichment/Restitution

### (*On Behalf of the Nationwide Class and California Subclass*)

114. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

115. **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Class who purchased the Products within the applicable statute of limitations.

116. **Plaintiff/Class Conferred a Benefit.** By purchasing the Products, Plaintiff and members of the Class conferred a benefit on Defendant in the form of the purchase price of the Products.

117. **Defendant's Knowledge of Conferred Benefit.** Defendant had knowledge of such benefit and Defendant appreciated the benefit because, were consumers not to purchase the Products, Defendant would not generate revenue from the sales of the Products.

118. **Defendant's Unjust Receipt Through Deception.** Defendant's knowing acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendant's fraudulent, misleading, and deceptive representations and omissions.

119. **Causation/Damages.**  As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for unjust enrichment in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

120.   **Punitive Damages.**  Plaintiff seeks punitive damages pursuant to this cause of action for unjust enrichment on behalf of Plaintiff and the Class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving.  Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

## VIII.   <u>PRAYER FOR RELIEF</u>

121.   WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

a.   **Certification:** For an order certifying this action as a class action, appointing Plaintiff as the Class Representative, and appointing Plaintiff's Counsel as Class Counsel, consistent with applicable law;

b.   **Declaratory Relief:** For an order declaring that Defendant's conduct violates the statutes and laws referenced herein, consistent with applicable law and pursuant to only those causes of action so permitted;

c.   **Injunction:** For an order requiring Defendant to change its business practices to prevent or mitigate the risk of the consumer deception and violations of law outlined herein. This includes, for example, orders that Defendant immediately cease and desist from selling the unlawful Products in violation of law; that enjoin Defendant from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; that require Defendant to engage in an affirmative advertising campaign to dispel the public misperception of the Products resulting from Defendant's unlawful conduct; and/or that require Defendant to take all further and just corrective action, consistent with applicable law and pursuant to only those causes

of action so permitted;

d. **Damages/Restitution/Disgorgement:** For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class, consistent with applicable law and pursuant to only those causes of action so permitted;

e. **Punitive Damages/Penalties:** For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with applicable law and pursuant to only those causes of action so permitted;

f. **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs, consistent with applicable law and pursuant to only those causes of action so permitted;

g. **Pre/Post-Judgment Interest:** For an order awarding pre-judgment and post-judgment interest, consistent with applicable law and pursuant to only those causes of action so permitted; and

h. **All Just & Proper Relief:** For such other and further relief as the Court deems just and proper.

Dated: January 3, 2023                    Respectfully submitted,

                                          **CLARKSON LAW FIRM, P.C.**
                                          By:

                                           */s/ Katherine A. Bruce*
                                          RYAN J. CLARKSON
                                          KATHERINE A. BRUCE
                                          KELSEY J. ELLING
                                          OLIVIA TREISTER
                                          *Attorneys for Plaintiff*

CLASS ACTION COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

2      122.   Plaintiff(s) hereby demand(s) a trial by jury on all issues and causes of action so

3   triable.

4

5   Dated: January 3, 2023                              Respectfully submitted,

6                                                       **CLARKSON LAW FIRM, P.C.**
                                                        By:

7                                                        */s/ Katherine A. Bruce*

8                                                       RYAN J. CLARKSON
                                                        KATHERINE A. BRUCE

9                                                       KELSEY J. ELLING
                                                        OLIVIA TREISTER

10                                                      *Attorneys for Plaintiff*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265